# STATE OF FLORIDA v McDEVITT

## Case Nos. 89-12755 TC A08 and 89-50018 TC A08

County Court, Palm Beach County

March 26, 1990

### APPEARANCES OF COUNSEL

**Brian Gabriel,** Certified Legal Intern, State Attorney's Office, for plaintiff.

**Richard Springer, Esquire,** for defendant.

### OPINION OF THE COURT

ROBERT S. SCHWARTZ, County Judge.

THIS MATTER WAS BEFORE THE COURT pursuant to the Defendant's motion to suppress the results of his breath test, and the Court having heard testimony of witnesses and argument of counsel, hereby denies the motion.

This case presents a very interesting issue regarding the question of substantial compliance with the rules of HRS as they relate to the proper method of conducting monthly maintenance tests on a breath instrument. The Defendant alleges that there was a violation of the applicable rules governing the testing of the accuracy of the breath testing instrument in question, during the monthly maintenance tests relevant to his breath tests.

The alleged defect is that the instrument was not tested to its third digit when simulated breath tests were run during the monthly maintenance tests. These tests are conducted by introducing solutions, containing a known amount of alcohol, into the instrument and running tests thereupon to ascertain the instrument's accuracy. There is no dispute as to the fact that the tests were only conducted to two digits.

The requirement to test to the third digit is alleged to come from HRS Rule 10D-42.024(1)(c), read in conjunction with Rule 10D-42.022(3)(b) and page two of HRS form 713, plus the interpretation of these rules by two expert witnesses. One of the witnesses, Mr. Majewski is employed by HRS to conduct annual inspections of all breath instruments in the southeast portion of Florida. The other witness is a Florida Highway Patrol Trooper, Richard Davis, who is the most experienced breath technician in Palm Beach County. Both witnesses are highly qualified experts in all phases of breath testing.

Whenever, in a DUI case, the Defense raises an allegation that there was a violation of a rule of HRS relating to breath testing, the Court must make inquiries into two areas. One, was there a violation of a rule or regulation of HRS committed in the Defendant's case. And two, assuming a violation occurred, was the violation insubstantial. (Florida Statutes, section 316.1932(1)(b)1, " . . . Any insubstantial differences between approved techniques and actual testing procedures in a given case shall not render the . . . test results invalid.")

## I. EXISTENCE OF A RULE VIOLATION

Rule 10D-42.024(1)(c) requires, inter alia, the breath instruments to be tested for "accuracy" on a monthly basis.

Rule 10D-42.022(3)(b) sets the standard for "accuracy" of any breath instrument sought to be certified for use in Florida. The rule requires, inter alia, that the instrument must be able to pass the following accuracy test:

140

(the instrument) shall measure the alcohol content of a vapor mixture with a systematic error . . . of plus or minus 5 percent at concentrations of 0.100 percent weight per volume [+/− .005] . . . using a minimum of 50 simulator tests.

Page two of HRS form 713, which is the form used by the representative of HRS, when performing the annual maintenance tests of a breath-testing instrument, defines satisfactory simulator tests to be tests accurate within +/− 5% at 0.100 and 0.200. It was not clear from the evidence whether page two was ever properly adopted as an official form of HRS pursuant to the administrative procedures act (thereby giving its requirements the force of a rule; see Florida Statute, section 120.52 (15) and *State v O'Hara Humphries,* 25 Fla. Supp.2d 11 (County Ct. 15th Jud. Cir. 1987).

Both expert witnesses testified that, in their opinion, the above-stated rules required the instrument to be tested to the third digit and failure to do so would raise a reasonable question regarding the scientific reliability of the Defendant's test results. Both witnesses, who are also certified breath testing instructors, instruct their respective classes to test the instruments to the third digit.

The Court agrees with the experts, to the extent that they say, that the best way to determine the accuracy of the instruments is to test them to the third digit. This is clear from the application of simple logic and mathematics: since five percent error is the maximum allowable deviation that a instrument may have and still be certifiable by the State under 10D-42.022; and five percent of a .10 breath test is .005; if a technician is only testing to two digits, there is no way to tell if the instrument has a greater error factor. The instrument when tested in two digits could theoretically be off as much as plus or minus .009 and the maintenance technician would have no way of knowing this. Both experts testified that the instrument does not round off the third digit when testing in the two digit mode, but that it simply drops the third digit.

Where the Court disagrees with the experts is where they opine that the rules require testing to the third digit and that, in the Defendant's case, the failure to do so raises a reasonable question as to the scientific reliability of his test results.

10D-42.022, which is entitled "Chemical Breath Testing Methods - Approval, Criteria and Certification," is not a general definition section to the rules. Instead it is clearly the section that designates the minimum standards that any manufacturer of breath testing instruments must meet in order to have their instrument certified for use in

Florida. If the defense position was correct, that "accuracy" is defined therein for use throughout all of the rules, then the maintenance operator would have to do fifty simulator tests to comply with the terms of this rule; a requirement that no one argues applies to monthly maintenance testing.

10D-42.0211, which is entitled "Definitions" and is obviously the definition section of the rules, does not contain a definition of "accuracy".

Further, assuming that the second page of the annual maintenance form 713 has the effect of a rule, it would seem only to apply to the annual inspection required to be performed by an HRS representative. This is thought by the Court to be so as there is no correlative page or requirement attached to the HRS monthly maintenance form 1514.

## II. SUBSTANTIAL COMPLIANCE

This Court has consistently ruled that the standard to be applied in determining whether there was substantial compliance with the rules and regulations of HRS, notwithstanding a violation of a particular rule, is whether the violation prejudiced the Defendant by raising a reasonable question regarding the scientific reliability of the test results. *State v Hill,* 26 Fla. Supp.2d 82 (County Ct. 15th Jud. Cir., 1987); see also *Ridgeway v State,* 514 So.2d 418 (Fla. 1st DCA 1987) "crucial significance" test.

In the Court's view, the Defendant's position fails to establish the lack of substantial compliance even assuming he is correct as to his interpretation of the above rules.

The Defendant's breath test was conducted on 3-24-89. The testimony of Mr. Majewski was that he tested the instrument in question on 1-18-89, at which time the instrument tested accurate to $+/-$ .005. He further testified that this type of instrument is not subject to intermittent failure and that, therefore, if the instrument ever failed to test within the above range, it would not cure itself, but would only get worse. This being the case, at the next annual inspection, he would have discovered a malfunctioning instrument which he would have removed from service (or condemned). Mr. Majewski further testified that he conducts annual inspections regularly, two to three times per year. He further testified that, although he is not one hundred percent positive, he is just about certain that he tested the instrument in question again in 1989, after the Defendant's breath test; that the machine tested as accurate to $+/-$ .005 and was therefore never condemned in 1989 or 1990 to date.

In view of the above, the Court finds, by a preponderance of the evidence, that the instrument used to test the Defendant's breath was accurate to $+/-$ .005 when his test was given on 3-24-89. Therefore, any deviation in applying the HRS rules does not raise a reasonable question regarding the scientific reliability of his test results.

DONE AND ORDERED in West Palm Beach, Florida, this 26th day of March, 1990.